**Pascual ARAUZ, Plaintiff,**

v.

**CANAL ZONE BUS SERVICE INC., Defendant.**

**Civ. No. 5726.**

District Court, Canal Zone Division Balboa.

March 30, 1965.

Henry L. Newell, Balboa, Canal Zone, for plaintiff.

William J. Sheridan, Jr., Balboa Heights, Canal Zone, for defendant.

CROWE, District Judge.

### STATEMENT OF THE CASE

Pascual Arauz, the plaintiff, brought this action against the defendant, Canal Zone Bus Service, Inc., alleging that he had been wrongfully discharged and praying that he be reinstated in his employment. He also prays for reimbursement for salary unpaid from the date of discharge to the time of reinstatement. The plaintiff had been employed as a bus driver by the defendant for approximately ten years prior to his discharge on April 18, 1963. On January 14, 1959, the terms and conditions

of his employment were specifically set out in a printed contract entitled "Contract of Employment".

The termination of plaintiff's employment came about as the result of a report made by an inspector on April 3, 1963 to W. L. Derbonne, Supervisor, employed by the defendant. The report stated that the plaintiff received money from a passenger and did not deposit it in the coin box on the bus where the fares should have been deposited.

The plaintiff made a motion to produce documents under Rule 34 and demanded the production of the names and addresses of any eyewitnesses to the events referred to in the report of the inspector and also reports of inspectors that were filed and made a part of the personnel file of the plaintiff. These reports are dated: January 3, 1961, January 27, 1962, November 6, 1962, and November 8, 1962. The defendant resisted the motion under Rule 30(b) claiming that if the inspectors were made known, "they would be subject to annoyance, embarrassment and oppression and, additionally, bodily injury; that threats against the safety of such inspectors have been made by various drivers in the employ of the defendant; that both the corporation, through its officers, and the managing head of the Motor Transportation Division have promised each prospective inspector that his identity would not be disclosed; that not alone would bodily injury result to such inspector, but the system of inspection by which theft is prevented, curtailed and discovered would be destroyed, which is, on information and belief, the intention and purpose of those collaborating with and assisting the plaintiff in the within action, to accomplish."

The parties were directed to submit authorities on the motions but before doing so, it was agreed between them that if the defendant would produce to the plaintiff the names of the witnesses that he planned to use in the trial of the action so their depositions might be taken if necessary by the plaintiff that no discovery would be necessary. The names of the witnesses were produced but they did not include the names of the inspectors.

The trial was had and the plaintiff testified that he did not mishandle the funds as accused and introduced supporting testimony. The defendant introduced Supervisor W. L. Derbonne and Harry H. Allen, Jr., Vice President of the defendant company, and Messrs. B. I. Everson and Roger W. Adams, but the inspectors were not introduced.

The plaintiff attacked the inspector's report dated April 19, 1963 and signed by W. L. Derbonne, Supervisor, which is labeled Plaintiff's Exhibit 2, on the ground that it was the product of hearsay evidence and that plaintiff was not given an opportunity to interrogate the inspector or know who the inspector was and therefore the loss of confidence on the part of the Company in the employee, as stated by the defendant, was not "justifiable" and was not in conformity with the provisions of the "Contract of Employment". The plaintiff also objected strenuously to the introduction of the other reports, which were in the plaintiff's personnel file in the hands of defendant, as being hearsay documents that should have been established by production of the inspectors making the reports.

The plaintiff admits that the administrative procedure provided for under the Contract of Employment was followed and the only questions that present themselves to the Court in this hearing are: (1) Was the admission of the inspectors' reports without being substantiated by the presentation of the inspectors themselves improper, and (2) Was the loss of confidence on the part of the Company, which brought about the expulsion, "justifiable"?

### FINDINGS OF FACT

1. The facts complained of in the complaint of the petitioner. Pascual Arauz, occurred within the Canal Zone and the defendant, Canal Zone Bus Service Inc. is a corporation duly qualified to do business and is doing business in the Canal Zone.

2. The petitioner had been employed by the defendant for a period of approximately ten years including the period from August 1st, 1961, the date on which he entered into a written Contract of Employment, which is filed herein as Defendant's Exhibit B, to April 18, 1963, the date of his expulsion.

3. The Contract of Employment provides under paragraph 6(a) 7 that the Contract of Employment may be terminated by the Company under the following circumstances:

"6 (a) 7. The justifiable loss of confidence on the part of the Company in the employee related to his handling of money in the course of his duties.

"(b) It is recognized that termination for cause under this Article, except for termination under paragraph 8, shall be subject to the procedures set forth in Article 4 of the franchise issued by the Governor of the Canal Zone to the Company, as amended April 16, 1959, requiring written approval by the Supervisor as designated in the franchise of dismissals for cause, with a right of written appeal wihin five days by either party from the Supervisor's decision to the Civil Affairs Director of the Canal Zone Government."

4. The inspector's report dated April 3, 1963, timed 2:57 p. m. to 3:25 p. m. and signed by W. L. Derbonne, Supervisor, against the driver and plaintiff in this case, Pascual Arauz, of receiving money from a passenger and not depositing it in the coin box where fares should have been deposited, was prepared and filed.

5. The plaintiff already had in his personnel file four inspectors' reports dated January 3, 1961, January 27, 1962, November 6, 1962, and November 8, 1962, accusing him of violations in handling fares, and on November 10, 1962, as a consequence of the four reports, he was given a six-day suspension. This November 10th letter advising him of the suspension also advised him that this was a "final warning".

6. On April 8, 1963, F. H. Baldwin, General Manager of the defendant Company, at that time wrote to the Superintendent of Motor Transportation Division requesting authority to discharge Mr. Arauz under Section 6(a) 7 of his Contract of Employment, and attached the personnel file of the plaintiff to the letter. The Superintendent of Motor Transportation Division, Mr. Roger W. Adams, thereupon held a hearing at which he met with plaintiff, Pascual Arauz, and his representatives, Mr. Berguido and Mr. Avila, on April 10th, and later he interviewed the inspector and "carefully weighed statements of all involved in this case." It was Mr. R. W. Adams' conclusion that the proposed termination action did not constitute a violation of the contract Mr. Arauz had with the Canal Zone Bus Service and he approved the request.

7. The plaintiff was notified by letter of April 18th from the defendant, signed by Harry W. Allen, Jr., General Manager, of the approval for termination of his employment and the plaintiff was notified that "Upon receipt of this letter your employment was terminated." The letter also notified the plaintiff that he had the right to appeal the decision of the "Franchise Supervisor" to the Civil Affairs Director in writing within five days after receipt of the notice of termination.

8. The Civil Affairs Director, Mr. Everson, thereupon reviewed the action of the Superintendent of Motor Transportation Division (Franchise Supervisor), Mr. R. W. Adams, and "thoroughly" investigated all of the facts by calling in the plaintiff and his representatives and by personally interviewing the inspector. Upon completing his review of the appeal, he decided that the request was justified and notified the plaintiff by letter of May 22nd wherein he stated: "I uphold the decision of the Superintendent, Motor Transportation Division."

9. The hearings held by the Superintendent, Motor Transportation Division, and the Civil Affairs Director were not in accordance with judicial procedure nor were the laws of evidence strictly observed, nor was cross examination of the inspector permitted by the defendant nor his representatives but the hearings were in accordance with customary procedure and conformed to the conditions of the contract and franchise referred to in the contract.

10. The only way that a proper inspection service can be conducted is by concealing the identity of inspectors from the drivers of the buses and permitting them to conduct their investigations incognito. If the inspectors in this locality are known, their efforts will be in vain.

11. Threats against the safety of such inspectors have been made by various drivers in the employ of the defendant and the disclosure of their identity would lead the inspectors to annoyance, embarrassment, oppression and bodily injury.

12. Inspectors have been promised by the corporation that their identities will not be disclosed and they are entitled to the protection of anonymity. Some of them are females and unable to protect themselves from physical attack.

13. The plaintiff was given full opportunity to take advantage of all of the administrative procedures afforded him, and the determination by defendant that it had lost confidence in the employee relative to his handling of money in the course of his duties was justified.

## FINDINGS OF LAW

1. This court has jurisdiction over the subject matter of the action.

■ 2. The plaintiff is denied recovery and relief as his dismissal conforms to the provisions of the Contract of Employment as the loss of confidence on the part of the Company toward the employee relative to his handling of money in the course of his duties was justifiable.

3. The administrative proceedings had in the case involving the review by the Supervisor (Superintendent, Motor Transportation Division) and the appeal to the Civil Affairs Director of the Canal Zone Government were in conformity with the provisions of the Contract of Employment.

■ 4. The inspector's report dated April 3, 1963 and signed by W. L. Derbonne, Supervisor, was introduced by plaintiff and he is precluded from complaining therefore that the document is inadmissible. No objection to its admissibility was made by the defendant and it is therefore considered as evidence.

5. Plaintiff's argument that the document was based on hearsay and should have been supported by the production of the inspector who made the oral report to W. L. Derbonne, upon which said W. L. Derbonne prepared the report, if valid would not be subject to be raised by the plaintiff who introduced the evidence himself.

■ 6. Plaintiff's objection to the introduction of the four other inspectors' reports dated January 3, 1961, January 27, 1962, November 6, 1962, and November 8, 1962, upon the grounds that they are hearsay and should have been supported by an introduction of the inspectors, is not valid for the following reasons: (1) They were documents long retained in the personnel file of the plaintiff made in accordance with the Contract of Employment and kept in the ordinary course of business, and (2) the use of such documents without the necessity of disclosing the identities of the inspectors in formulating the decisions of the defendant relative to its confidence or lack of confidence in its employees is justifiable and in accordance with good business practice. The disclosure of the identities of the inspectors would lead to embarrassment, personal danger, and loss of effectiveness in their employment and should not be done.